IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THADDEUS D. SMITH, SR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 15-00629-KD-N |
| ) | |
| THE STATE OF ALABAMA ) | |
| DEPARTMENT OF HUMAN ) | |
| RESOURCES CHILD SUPPORT ) | |
| DIVISION, ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATIONS

This action is before the Court on the motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. 12) and separate supporting brief (Doc. 13) filed by the Defendant State of Alabama Department of Human Resources Child Support Division (hereinafter, "ADHR"). Plaintiff Thaddeus D. Smith, Sr., proceeding *pro se* and *in forma pauperis* (*see* Doc. 7), has timely filed a response (Doc. 16) in opposition to the motion, and ADHR has timely filed a reply (Doc. 17) to the response. The motion to dismiss is now under submission (*see* Doc. 14) and is ripe for disposition.

Under S.D. Ala. GenLR 72(b), the motion to dismiss has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S). Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that ADHR's motion to dismiss (Doc. 12) be **GRANTED**, though under Federal Rule

of Civil Procedure 12(b)(1) rather than 12(b)(6). The undersigned further **RECOMMENDS**, to the extent Smith is asserting claims against "Ms. Y. Anderson" in his complaint, that those claims be **DISMISSED** *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii).

## I.   Background[1]

On December 14, 2015, Smith initiated this action by filing a Complaint (Doc. 1) with the Court, asserting causes of action under 42 U.S.C. § 1983. Smith alleges, in short, that ADHR, in particular through its officer/employee "Ms. Y. Anderson" with the Mobile County office of ADHR's Child Support Enforcement Division, has repeatedly attempted to collect child support from Smith that he does not owe.

More specifically, Smith alleges that ADHR has "unjustly harassed and extorted for monies that were already being paid to the state along with arrearages on all cases" by "continuously collecting monies [from Smith] over the amount they

---

[1]   ADHR has expressly invoked only Federal Rule of Civil Procedure 12(b)(6) in its motion to dismiss. In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *E.g., Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ((citation and quotations omitted)). " 'Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.' " *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir.) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted)), *cert. denied*, 135 S. Ct. 759 (2014).
    ADHR's motion also invokes Eleventh Amendment immunity, an issue of subject matter jurisdiction, which implicates Rule 12(b)(1). Nevertheless, ADHR's immunity argument is a "facial," rather than "factual," attack on subject matter jurisdiction, meaning that it is "based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

were entitled." Smith attaches as "Exhibit 1" to his complaint a letter dated November 23, 2015, with the subject "Notice of Past Due Child Support," sent to Smith by "Ms. Y. Anderson" with the Mobile County office of ADHR's Child Support Enforcement Division.[2] The letter states:

> The Child Support Enforcement Division is authorized to collect child support on behalf of your child(ren).
>
> Our records indicate that no child support payment has been made for at least 30 days, or that the amount of past due support has become equal to one month's payment. Please remit your payment within five days. If you are unable to pay what you owe, please contact this office immediately.
>
> If payment has already been made, please disregard this notice.
>
> …
>
> Please notify this office of your new employer so that an income withholding order can be entered in your case(s). **Failure to provide this information may result in a referral of the case to the IV-D attorney for possible court proceedings.**

Citing to this letter, Smith alleges "Ms. Anderson is still trying to collect on a case that is closed and only due arrearage…"

Smith also sent a letter to the Bay Haas Building, where the Mobile office of the Child Support Division is located, which was returned to him as "not deliverable as addressed" and with the handwritten notation "return to sender." (*See* Doc. 1 at 7 [Complaint Exhibit 2]). On the basis of this returned letter, Smith claims "that the State of Alabama also conspired with the Child Support Division with the Bay

---

[2] "Under Rule 10(c) Federal Rules of Civil Procedure, [copies of written instruments that are exhibits to a pleading] are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam).

Haas Building to aid in violating the Plaintiffs [sic] right to due process with mail tampering[,]" and that there was "conspiracy between the Child Support Divisions and the Child Support Division at the Bay Haas Building …" Specifically, Smith "believes that Ms. Anderson with the Mobile Child Support Division had already received their [sic] and gave notice to someone with the Bay Haas Division to not receive their letter which explained [Smith's] inability to pay and was second proof of trying to be in compliance with the system" by "inform[ing] the State of Alabama Child Support Division that [he] had lost [his] job and willingly gave the information needed to retrieve [his] child support funds from [his] unemployment[,]" leaving him "sixty-six dollars a week to survive on."

Ms. Anderson has also "repeatedly extorted money from" Smith when his two child support cases "emancipated and the law stated [Smith] had the right to request the payments stop for those cases. However, Ms. Anderson and the Mobile Child Support Division purportedly took "almost six months" to stop deducting payments for those cases from Smith's payroll, "in spite of the numerous request [sic] to cease those payments…"[3] Ms. Anderson has also "sought to have [Smith] arrested for payments that were currently being made it was found to be a clerical era [sic] and the warrant was canceled…"[4] Ms. Anderson purportedly "has taken a

---

[3] Smith has attached three such requests to his complaint as Exhibit 3.  (Doc. 1 at 8 – 10).

[4] In support of this assertion, Smith cites to Exhibit 4 of his complaint, which consists of (1) an order from the Circuit Court of Mobile County, Alabama, entered May 18, 2011, noting Smith's failure to appear at hearing for review of child support payments, finding him in contempt of court, and ordering that he be arrested and held in custody pending his deposit of $500.00 cash with the clerk of court; (2) a second order from the Mobile County Circuit Court in the same case entered June 7, 2011, withdrawing the writ of arrest, based on

special interest and extra time for extreme measures in an attempt to help Ms. Davis harass [Smith]."[5]  Smith has requested that ADHR appoint him counsel to dispute the Child Support Division's actions but has not been offered any.[6]

Smith alleges that ADHR has violated his rights under the Fifth, Eight, and Fourteen Amendments of the United States Constitution and demands monetary relief and "any other relief that may be appropriate, including injunctive orders…" Liberally construing Smith's complaint, the undersigned finds that it alleges causes of action against both ADHR and its employee "Ms. Anderson." [7] [8]

---

representations by the Assistant Attorney General for ADHR that the writ of arrest "was a clerical error;" and (3) a letter from Smith to the circuit court judge, also dated June 7, 2011, stating that he was enclosing "the appropriate paperwork" showing that he was current on his child support payments, and that he had been informed he did not need to appear for the court hearing if he made his past-due payments before the date of the hearing.  (Doc. 1 at 11 – 13).

[5] Given that Smith seeks to have "any future court proceedings or increases to Ms. Davis ceased completely," it appears that "Ms. Davis" is the mother of Smith's child(ren) for whom ADHR is collecting support payments.

[6] Smith has also attached as "Exhibit 6" to his Complaint another, unsigned complaint against the Circuit Court of Mobile County, Alabama, and the Mobile County Sherriff's Department.  (Doc. 1 at 21 – 23).  Smith "offers the court a view" of that complaint "in reference to the extenuating circumstances of this case as they are related…"  (*Id.* at 3).  Because Smith appears to have used "Exhibit 6" to initiate another action with this Court, *Smith v. The State of Alabama Circuit Court of Mobile County et al.*, Case No. 1:15-cv-00622-KD-B, the claims contained therein are not a part of this action.  Moreover, having considered the allegations in "Exhibit 6," the undersigned finds they do not affect the recommendations made herein.

[7] Though Smith's complaint lists only ADHR in the style and in the section marked "Name(s) of defendant(s)" (*see* Doc. 1 at 1), Ms. Anderson features prominently in that pleading's substantive factual allegations (*see id.* at 2 – 3).  Moreover, in both his response to ADHR's motion to dismiss and his unsuccessful motion to amend his complaint, Smith mentions "Plaintiffs' Claims Brought Directly Against DHR or **DHR Individual Defendants**…" (Doc. 16 at 1 (emphasis added)).   (*See also* Doc. 18 at 1 (mentioning "Plaintiffs' Claims Brought Directly Against DHR and **Individual Defendants**." (emphasis added)).

## II.   Analysis

### a.   ADHR is Immune from Suit on Smith's Claims

ADHR argues that Smith's claims against it are due to be dismissed because, *inter alia*, it is immune from suit under the Eleventh Amendment of the United States Constitution for claims under § 1983.

> Eleventh Amendment immunity bars suits by private individuals in federal court against a state unless the state has consented to be sued or has waived its immunity or Congress has abrogated the states' immunity. *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363–64, 121 S. Ct. 955, 962, 148 L.Ed.2d 866 (2001); *Cross v. Ala. Dep't of Mental Health & Mental Retardation,* 49 F.3d 1490, 1502 (11th Cir. 1995). "This bar exists whether the relief sought is legal or equitable." *Papasan v. Allain,* 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). The Eleventh Amendment applies when "the State or one of its agencies or departments is named as the defendant...." *Id.* (quotation marks omitted). That is, Eleventh Amendment immunity "is available 'only' to states and arms of the states." *Walker v. Jefferson Cty. Bd. of Educ.,* 771 F.3d 748, 751 (11th Cir. 2014).
>
> Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir.1990). Furthermore, the State of Alabama has not agreed to be sued for violations of an individual's civil rights. *See* Ala. Const. art. I, § 15 ("[T]he State of Alabama shall never be made defendant in any court of

---

[8] After the present motion to dismiss was taken under submission, Smith, who has been given the ability to file documents and to receive notice of filings electronically in this action, filed a document styled as an "Amended Complaint" but docketed as a "Second Motion to Amend Complaint." (Doc. 18). The Court construed the filing as a motion for leave to amend under Federal Rule of Civil Procedure 15(a)(2) and denied it for failure to comply with S.D. Ala. CivLR 15(a) and (b), and because amendment would have been futile. (*See* Doc. 19). Noting that the motion to amend appeared "to seek to eliminate the State of Alabama Department of Human Resources Child Support Enforcement Division and replace it with a Defendant identified as 'The City of Mobile County Department of Human Resources Child Support Enforcement Division[,]' " the Court noted: "A *city* entity of this nature does not exist. Pursuant to Alabama Code § 38-2-8, the Alabama Department of Human Resources is a state agency with county departments. *See also Ross v. State of Ala.*, 893 F. Supp. 1545, 1550 (M.D. Ala. 1995) ('By statute, the Houston County DHR is a division of the State Department of Human Resources and operates under its direction.')." (*Id.* at 2 – 3). Smith has made no further attempts to amend his pleadings. Thus, Smith's initial complaint (Doc. 1) remains the operative pleading in this action.

> law or equity."); *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S. Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978) (citing Ala. Const. art. I, § 14, now codified as § 15). Thus, if [DHR] an "arm of the state," Eleventh Amendment immunity bars [Smith]'s § 1983 action.
>
> Whether an entity is an "arm of the state" is determined by considering four factors: (1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *Walker,* 771 F.3d at 751–53.[9]

*Nichols v. Ala. State Bar*, 815 F.3d 726, 731-32 (11th Cir. 2016) (per curiam)

(footnote omitted).

---

[9]   In *Walker*, the Eleventh Circuit recently made clear that this multifactor test for Eleventh Amendment immunity, which was first articulated as a three-factor test in the panel decision *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1511 (11th Cir. 1990), and later refined into a four-factor test in the *en banc* decision *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc), "remains the law of the circuit."  771 F.3d at 752 – 53.

As noted by the *Walker* court, in *Versiglio v. Board of Dental Examiners of Alabama*, 686 F.3d 1290 (11th Cir. 2012), a panel of the Eleventh Circuit Court of Appeals held: "Whether an agency qualifies as an arm of the state is a federal question with a federal standard, but whether that standard is met will be determined by carefully reviewing how the agency is defined by state law… In conducting our analysis, this court 'has stated the most important factor is how the entity has been treated by the state courts.' "  686 F.3d at 1291-92 (quoting *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984) (citing *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980) (stating that whether an entity is a " 'second self' of the state or a 'separate and distinct' entity subject to suit 'must be determined by the law of the state' " (citation omitted)))).  *Accord Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 659 (11th Cir. 2012) (per curiam) (same, quoting *Versiglio*).

*Walker* rejected arguments that the *Versiglio* decision "can be read as collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry—whether the state courts grant state law immunity to the entity for suits based on state law—" finding that such a reading "conflicts not only with our 1990 decision *Stewart*, but also with our 2003 en banc decision in *Manders*."  771 F.3d at 754 (declining to read *Versiglio* "in a way which violates our prior panel precedent rule and creates interpretive problems for panels in the future").  *Walker* reaffirmed that "how the state courts treat an entity is only one part of the first factor of the *Stewart* and *Manders* analysis. Within the first factor the court also weighs how state statutes treat the particular entity." *Id.* (quotation omitted).  *Walker* also noted that, "[t]o the extent that *Huber* held that Eleventh Amendment immunity is governed solely by how state law characterizes an entity, it has been superseded by the later en banc decision in *Manders*, 338 F.3d at 1309 (setting out four-part Eleventh Amendment immunity test)." *Id.* n.4.

Considering these four factors, the undersigned finds that ADHR is properly considered an arm of the State of Alabama that enjoys Eleventh Amendment immunity.[10]  As to the first factor ("how the state law defines the entity"), under Alabama Code § 38-2-1, the Alabama legislature authorized the creation of "a **State** Department of Human Resources…" (emphasis added).  The state legislature has also specifically delegated to ADHR the power to "operate child support programs." Ala. Code  § 38-10-3.   Moreover, the Supreme Court of Alabama has repeatedly found ADHR to be a state agency entitled to sovereign immunity.  *See, e.g.*, *Ex parte Ala. Dep't of Human Res.*, 999 So. 2d 891, 895-96 (Ala. 2008); *Burgoon v. Ala. State*

---

[10]    ADHR does not acknowledge this four-factor test.  Rather, its opening brief (Doc. 13) cites, in conclusory fashion, to Ala. Code § 38-2-8 (concerning county departments of human resources) and to Eleventh Circuit cases involving Georgia and Florida state agencies, in support of its assertion that it is an arm of the state of Alabama.  Likewise, its reply brief (Doc. 17) cites only to Ala. Code § 38-2-1 (providing for the creation of "a State Department of Human Resources") and nonbinding cases finding other Alabama state agencies to be entitled to Eleventh Amendment immunity.  It has cited no authority, either binding or persuasive, holding that it is an arm of the state, and, as *Walker* made clear, *see supra*, n.9, how state statutes treat an entity is only a part of the first factor of the test.

Generally, the Court is under no obligation to advance a defense of Eleventh Amendment immunity *sua sponte*.  *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001) ("[U]nlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does.").  Nevertheless, because ADHR has raised the issue, however perfunctorily, and because Smith has been granted leave to bring this action *in forma pauperis* under 28 U.S.C. § 1915 (*see* Doc. 7), the Court would still be obliged to engage in the analysis.  *See* 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the action or appeal … (i) is frivolous …; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief..").  Moreover, because whether ADHR constitutes an arm of the state under Eleventh Amendment immunity analysis is a question of law, *Nichols*, 815 F.3d at 732 n.4, and is dispositive of the claims in this action, the undersigned finds it appropriate to address the issue as early as practicable.  *See Selensky v. Alabama*, 619 F. App'x 846, 848-49 (11th Cir. 2015) (per curiam) (unpublished) (affirming *sua sponte* dismissal of claims against State of Alabama under 28 U.S.C. § 1915(e)(2)(B) on grounds of Eleventh Amendment immunity, despite fact that Alabama had filed no responsive pleading in the district court or brief on appeal); *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (affirming *sua sponte* dismissal on similar grounds).

*Dep't of Human Res.*, 835 So. 2d 131, 133 (Ala. 2002); *Ex parte Mobile Cty. Dep't of Human Res.*, 815 So. 2d 527, 530 (Ala. 2001).

As to the second factor ("the degree of state control over the entity"), ADHR's "chief executive officer," the Commissioner of Human Resources, is appointed by and serves at the pleasure of a Board of Human Resources consisting of the Alabama governor and six other members appointed by the governor. *See* Ala. Code §§ 38-2-2, 38-2-3(a)-(b). The express "aim" of ADHR is "the promotion of a unified development of welfare activities and agencies of the state and of the local governments so that each agency and each governmental institution shall function as an integral part of a general system." *Id.* § 38-2-6. To that end, "[t]he state board, in conference with the commissioner, shall be responsible for the adoption of policies, rules and regulations for its government and for the government of the state department[,]" and "all administrative and executive duties and responsibilities of the state department shall be performed by the commissioner, subject to the authority of the state board." *Id.* § 38-2-3(b). As to the third factor ("where the entity derives its funds"), ADHR is funded by state legislative appropriations, with the commissioner required to submit an annual budget to the board for its approval. *See id.* § 38-2-3(c).[11]

The undersigned was not able to locate a statutory provision indicating who would be responsible for a judgment against ADHR. Given that the State of

---

[11] Ala. Code § 38-2-3(c) also contemplates ADHR's receipt of federal funds. However, "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985), *superseded on other grounds by statute, as recognized in Lane v. Pena*, 518 U.S. 187 (1996).

Alabama and its agencies are immune from money damages under the Alabama constitution, such a provision may have been omitted as unnecessary. Assuming that ADHR would be responsible for any judgment against it, the fourth *Manders* factor still weighs in favor of "arm of the state" status, given that ADHR's is funded by Alabama legislative appropriations. *See Manders*, 338 F.3d at 1327-28 & n.51 (11th Cir. 2003) ("Never has the Supreme Court required an actual drain on the state treasury as a per se condition of Eleventh Amendment immunity … The State's 'integrity' is not limited to who foots the bill..."). *Cf. Nichols*, 815 F.3d at 732-33 ("Judgments against the [Alabama ]State Bar will be paid out of its state treasury fund, but only "as budgeted and allotted" by the Alabama legislature, [Ala. Code] § 34–3–44, potentially affecting the treasury as a whole."). "Moreover, the United States Supreme Court has never said that the absence of the treasury factor alone defeats immunity and precludes consideration of other factors, such as how state law defines the entity or what degree of control the State has over the entity." *Manders*, 338 F.3d at 1328 n.51. Even if the fourth *Manders* factor is absent here, the other three factors sufficiently weigh in favor of "arm of the state" status for ADHR.[12]

---

[12] In an unpublished decision, the Eleventh Circuit affirmed dismissal of a *pro se* plaintiff's claims against ADHR on Eleventh Amendment immunity grounds. *See Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (per curiam). However, the *Rizo* opinion offered no substantive analysis in equating ADHR with "the State of Alabama," and unpublished decisions are not binding authority in this Circuit. *See* 11th Cir. R. 36-2; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority."). Other district court decisions have also concluded ADHR is entitled to Eleventh Amendment immunity, though with varying levels of rigorousness in applying the four-factor *Manders* test. *See Zeigler v. Ala. Dep't of Human Res.*, 710 F. Supp. 2d 1229, 1249-50 (M.D. Ala. 2010) (relying on *Rizo*

In his response in opposition to ADHR's motion to dismiss, Smith asserts that the "Eleventh Amendment permits citizens of any state to seek Injunctions against state officials in federal court to end a continuing violation of federal law" (Doc. 16 at 1), thus appearing to invoke the exception to Eleventh Amendment immunity first set out in *Ex parte Young*, 209 U.S. 123 (1908). However, as Smith himself notes, the *Ex parte Young* exception applies only to individual state officials named as defendants. For state agencies such as ADHR that are arms of the state, Eleventh Amendment immunity bars injunctive as well as monetary relief. *See Ross*, 701 F.3d at 661 ("Ross also argues that the Eleventh Amendment does not bar her claim for injunctive relief, but Ross failed to file a complaint against a state officer. Ross named only the Health Department as a defendant, but an injunction can issue only against an individual officer. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74, 116 S. Ct. 1114, 1132, 134 L. Ed. 2d 252 (1996) ('The Eleventh

---

and general Eleventh Amendment immunity authority); *Mykins*, 2011 WL 4549181, at *3 & n.5 (Both ADHR and county department of human resources "were created by the Alabama Legislature, Ala. Code §§ 38–2–1, –8, and both partake of sovereign immunity under state law. *Ex parte Alabama Department of Human Resources*, 999 So. 2d 891, 896 (Ala. 2008) (ADHR); *Ex parte Trawick*, 959 So. 2d 51, 55–56 (Ala. 2006) (county DHR). Finally, a number of federal courts have determined that Alabama state and county DHRs are protected by the Eleventh Amendment.[] Given that the DHR defendants are clothed with sovereign immunity under state law, that they are routinely found to be arms of the state for purposes of Eleventh Amendment analysis, and that the plaintiff does not contest their status as such, the Court concludes that they are shielded by the Eleventh Amendment. (citing other district court cases in footnote)."); *Poindexter v. Dep't of Human Res.*, 946 F. Supp. 2d 1278, 1284 (M.D. Ala. 2013) ("Both the State Personnel Board and DHR are state agencies, Ala. Code §§ 36–26–4, 38–2–8, and Alabama has preserved its immunity. Ala. Const. Art. 1, § 14. Accordingly, Plaintiffs' claims against DHR and the State Personnel Board are due to be dismissed for want of jurisdiction."); *Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1224 (N.D. Ala. 2014) (Alabama state and county DHR agencies are "arms of the state for the purpose of sovereign immunity. *See, e.g.*, *Ex parte Mobile County Dept. of Human Res.*, 815 So. 2d 527, 530 (Ala. 2001); *Mitchell v. Davis*, 598 So. 2d 801, 806 (Ala. 1992).").

Amendment bar [may] be lifted, as it was in *Ex parte Young*, [209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)], to allow a suit against a state officer.')."); *Nichols*, 815 F.3d at 731 n.3 ("Given that Nichols sues only the Alabama State Bar, and not any individual state officials, we need not address the exception to Eleventh Amendment immunity recognized in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 113 S. Ct. 684, 688 (1993) (explaining that the *Ex Parte Young* exception 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought').").

Accordingly, the undersigned finds that ADHR's motion to dismiss is due to be **GRANTED** as to Smith's claims against it, though dismissal should be without prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction, rather than Rule 12(b)(6). *See Nichols*, 815 F.3d at 733 (11th Cir. 2016) ("Given that the State Bar is an arm of the state entitled to Eleventh Amendment immunity, the district court properly dismissed Nichols's § 1983 action without prejudice for lack of subject matter jurisdiction.").[13]

---

[13] By alleging a "conspiracy" regarding his returned letter, Smith also appears to invoke 42 U.S.C. § 1985(3). However, ADHR is immune from suit under that section just as it is under § 1983. *See Fincher v. State of Fla. Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986) (per curiam) ("We find no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions.").

Moreover, a claim under § 1985(3) "requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (quotations omitted). Smith has not alleged any class-based discriminatory animus in his complaint.

Finally, § 1985(3) requires a conspiracy among "two or more persons…" Smith has alleged a conspiracy among "that the State of Alabama," "the Child Support Division with the Bay Haas Building," and "the Child Support Divisions." Ms. Anderson is an employee

### b. Any Claims against Ms. Anderson are Due to be Dismissed

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation and quotation omitted). "The Eleventh Amendment protects no personal assets in 'individual' or 'personal' capacity suits in federal court." *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). "[P]ersons can have individual liability for misconduct as government employees. Plaintiffs are not usually required to designate, with particular words in the pleadings, that they bring their action against defendants in the defendants' individual or official capacities, or both." *Id.* at 1529-30. Nevertheless, "in general, plaintiffs have a duty to make plain who they are suing and to do so well before trial." *Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995). "When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

As noted previously, *see supra*, n.7, it is not even clear whether Smith considers "Ms. Anderson" to be a named defendant in this action. However, considering the course of proceedings, the undersigned finds that, to the extent Smith has intended to bring suit against "Ms. Anderson," it is only in her official

---

of the Mobile office of ADHR's Child Support Division, all Child Support Divisions are part of ADHR, and ADHR is an Alabama state agency. Even if the State of Alabama was a "person" under § 1985(3), which it is not, it cannot "conspire" with itself.

capacity.  Smith's complaint expressly names only ADHR in both the style and in the section expressly labeled "name(s) of defendant(s)," and his statement of factual allegations opens with the express statement: "The Plaintiff is alleging the State of Alabama Department of Human Resources Child Support Enforcement Division has violated the Plaintiff's Civil and Constitutional rights…." (Doc. 1 at 1 – 2).  While Smith has sought monetary damages, he has also sought a litany of injunctive relief intended to affect the proceedings of his child support cases, which would only be available against a state agent in her official capacity.

In his unsuccessful attempt to amend his complaint, he sought to change the named defendant to the "City of Mobile County Department of Human Resources Child Support Enforcement Division" but again did not seek to include "Ms. Anderson" in the style or "named defendant(s)" section of the proposed amended complaint.  (Doc. 18 at 1).   Moreover, his proposed amended complaint dropped its specific request for monetary damages and focused primarily on injunctive relief regarding his child support cases.  Also tellingly, Smith's response in opposition to the present motion to dismiss made no specific mention of Ms. Anderson and, other than an irrelevant argument that a state's political subdivisions such as counties and municipalities may be sued under § 1983, primarily relied on the *Ex parte Young* doctrine, which is available only against state officials sued in their official capacity.  The undersigned has already liberally construed Smith's complaint to state a claim against Ms. Anderson at all.  Considering the foregoing, the undersigned will not further construe an individual capacity claim against her.

Ms. Anderson in her official capacity is immune from monetary damages for the same reasons as ADHR. *See Kentucky v. Graham*, 473 U.S. at 166, 169 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity … Th[e Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." (citation omitted)).

While suit under § 1983 could be maintained against Ms. Anderson in her official capacity under the doctrine of *Ex parte Young*, the undersigned finds that Smith is not entitled to make use of that doctrine here.

> Under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), … there is a long and well-recognized exception to [Eleventh Amendment immunity] for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law. *See Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) ("We do not ... question the continuing validity of the *Ex parte Young* doctrine.")…
>
> The Eleventh Amendment generally does not bar the exercise of the judicial power of the United States where a plaintiff seeks to compel a state officer to comply with federal law. *See Ex parte Young,* 209 U.S. at 158–59, 28 S. Ct. 441. Because the enforcement of "an unconstitutional statute is void, and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States,' " the Supreme Court has held that the officer is not entitled to protection by the state's sovereign immunity. *Green v. Mansour,* 474 U.S. 64, 68, 106 S. Ct. 423, 88 L.Ed.2d 371 (1985) (quoting *Ex parte Young,* 209 U.S. at 160, 28 S. Ct. 441); *see also Coeur d'Alene,* 521 U.S. at 288, 117 S. Ct. 2028 (O'Connor, J., concurring) ("The *Young* doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity."). This doctrine has, therefore, been described as a legal "fiction" because it creates an imaginary

distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution. *See Pennhurst,* 465 U.S. at 114 n.25, 104 S. Ct. 900.

Thus, the availability of this doctrine turns, in the first place, on whether the plaintiff seeks retrospective or prospective relief. As the Supreme Court has explained:

> *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."

*Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) (quoting *Green,* 474 U.S. at 68, 106 S. Ct. 423). Therefore, the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief. *See Green,* 474 U.S. at 68, 106 S. Ct. 423. If the prospective relief sought is the functional equivalent of money damages, however, *i.e.,* "[i]t is measured in terms of a monetary loss resulting from a past breach of a legal duty," *Ex parte Young* does not apply. *Edelman,* 415 U.S. at 669, 94 S. Ct. 1347.

Because of the important interests of federalism and state sovereignty implicated by *Ex parte Young,* however, the doctrine is not without limitations... First, the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law. *See Papasan,* 478 U.S. at 277–78, 106 S. Ct. 2932; *Green,* 474 U.S. at 68, 106 S. Ct. 423. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. *See Papasan,* 478 U.S. at 277–78, 106 S. Ct. 2932. This requirement protects states by setting "a minimum threshold for abrogating a state's constitutional immunity." *Booth v. Maryland,* 112 F.3d 139, 142 (4th Cir. 1997), *cert. denied,* 524 U.S. 905, 118 S. Ct.

>2063, 141 L. Ed. 2d 140 (1998). Second, in *Idaho v. Coeur d'Alene Tribe,* the Supreme Court … said that the *Ex parte Young* doctrine does not apply where the equitable relief sought "implicates special sovereignty interests." 521 U.S. 261, 281, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997). Thus, if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment.

*Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999).

Though some of the relief Smith seeks is phrased in prospective terms (i.e. "any future court proceedings or increases to Ms. Davis ceased completely, any future reference to collection of past cases ceased…" (Doc. 1 at 3)), the allegations in Smith's complaint (Doc. 1) establish that he is merely seeking "to adjudicate the legality of past conduct" (i.e. Ms. Anderson's alleged improper handling of Smith's child support cases) and to "indirectly to encourage compliance with federal law through deterrence." *Cf. Jones v. Buckner*, 963 F. Supp. 2d 1267, 1284 (N.D. Ala. 2013) (Coogler, J.) ("The issuance of a declaratory judgment against the Defendants in their official capacity declaring that, by their past actions, they have exceeded their authority and violated federal law would serve no purpose other than to validate or authorize an award of monetary damages."). Thus, *Ex parte Young* is inapplicable to Smith's present claims for equitable relief against Ms. Anderson in her official capacity. Accordingly, all of Smith's official capacity claims against Ms. Anderson are due to be **DISMISSED without prejudice** under 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii).[14]

---

[14] The general rule in this Circuit is that, "[w]hen it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it **with prejudice**." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam)

### III.  Conclusion and Recommendations

In accordance with the foregoing analysis, it is **RECOMMENDED** that ADHR's motion to dismiss (Doc. 12) be **GRANTED** under Federal Rule of Civil Procedure 12(b)(1) and that the claims against Ms. Anderson be **DISMISSED** *sua sponte* under 1915(e)(2)(B)(ii) & (iii), such that all of Smith's claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction, and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.

### IV.  Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge

---

(unpublished) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to counseled parties)).  Here, the undersigned is recommending dismissal **without** prejudice. Moreover, "[d]ismissal with prejudice is proper … if the *pro se* plaintiff has indicated that he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." *Id*.  Smith has not made any other attempts to amend his complaint since his first was denied over two month ago, and even a more carefully drafted complaint cannot overcome the clear application of Eleventh Amendment immunity to Smith's claims. Accordingly, the Court need not afford Smith another opportunity to amend prior to dismissal.

on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

       **DONE** this the 3rd day of June 2016.

                                          */s/ Katherine P. Nelson*
                                          **KATHERINE P. NELSON**
                                          **UNITED STATES MAGISTRATE JUDGE**